IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| VERO FINANCE TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> JULIE MADDOX, <br><br> Defendant. | CIVIL ACTION FILE <br> NO. 1:22-CV-4186-TWT |

OPINION AND ORDER

This is an action for breach of a restrictive covenant. It is before the Court on the Defendant's Motion to Dismiss [Doc. 23], which is GRANTED in part and DENIED in part.

I. Background[1]

This case arises from the events following the Defendant Julie Maddox's resignation from her job with the Plaintiff Vero Finance Technologies, Inc. (Compl. ¶ 10). Vero operates "a commercial lending platform that partners with banks and credit unions to offer inventory financing for dealers of manufactured goods." (*Id.* ¶ 7). Beginning in September 2021, Maddox worked for Vero as Vice President of Sales and Operations on their executive leadership team, handling account management and sales operations in the Southeast. (*Id.* ¶ 10). Through her employment with Vero, Maddox had access

---

[1] The Court accepts the facts as alleged in the Complaint as true for purposes of the present Motion to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

to proprietary and confidential company information, including client lists, financing strategies, financing positions, lending processes, inventory valuations, and budget data. (*Id.* ¶ 12).

When Vero hired Maddox, she signed a Proprietary Information and Inventions Agreement ("PIIA"), under which she "agreed not to use or disclose confidential or proprietary information during and after her employment." (*Id.* ¶ 28 (citing Doc. 1-2)). Under the PIIA, Maddox specifically agreed to promptly return all company items containing proprietary information upon her termination. (*Id.* ¶ 29). The PIIA also contained non-competition and non-solicitation clauses that prohibited Maddox from performing certain competitive activities after her termination. (*Id.* ¶¶ 31–35).

Maddox worked for Vero until May 2022 when she submitted her resignation. (*Id.* ¶ 38). Vero alleges that before Maddox returned her company computer, she deleted all of her emails and the contents of her hard drive, destroying the data on her laptop that she was obligated to preserve under the PIIA. (*Id.* ¶ 40). After resigning, Maddox returned to work for her former employer and Vero competitor, NextGear Capital. (*Id.* ¶¶ 11, 43). Vero alleges that upon Maddox's return to NextGear, she used confidential information from her employment with Vero to advantageously repossess certain inventory from Atlanta Auto Firm ("AAF"), a local preowned car dealer. (*Id.* ¶¶ 41–52).

Vero alleges that Maddox violated the PIIA's non-competition clause by

2

accepting reemployment with NextGear and the PIIA's confidentiality provision by sharing Vero's confidential information with NextGear. (*Id.* ¶¶ 57, 59). Vero also alleges that Maddox violated the PIIA's customer-specific non-competition clause by providing services to a known client of Vero, AAF. (*Id.* ¶ 58). Vero claims that "Maddox's conduct reveals an improper intent to steal Vero's information and documents for her own benefit, the benefit of NextGear, and potentially the benefit [of] other Vero competitors." (*Id.* ¶ 60).

Vero filed the present action on October 20, 2022, bringing three counts of breach of restrictive covenants and confidentiality obligations under the PIIA, two counts of violation of federal and state trade secrets statutes, and one count of tortious interference with business and contractual relationships. Maddox now moves to dismiss all claims against her for failure to state a claim.

## II.     Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in

the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Amwi. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

Maddox moves to dismiss all six of Vero's claims against her, arguing that (1) the breach of contract claims should be dismissed because the PIIA's restrictive covenants are unenforceable under New York law and because the factual allegations do not demonstrate that Maddox breached the covenants, (2) the trade secrets claims fail as a matter of law because the information that Maddox allegedly misappropriated was not secret, and (3) the tortious interference claim fails as a matter of law because Maddox did not unlawfully interfere with any of Vero's business relationships. (Br. in Supp. of Def.'s Mot. to Dismiss, at 1–3). The Court addresses Maddox's arguments in support of dismissal and Vero's responses thereto in turn.

### A. Enforceability of the Restrictive Covenants (Counts I–III)

Maddox first argues that the restrictive covenants in the PIIA are unenforceable under New York law and that Counts I, II, and III should therefore be dismissed.[2] (Br. in Supp. of Def.'s Mot. to Dismiss, at 10–17). She claims that the restrictive covenants are not necessary to prevent her from using or disclosing trade secrets or confidential information and that the services she provided to Vero were not unique or extraordinary. (*Id.* at 11, 16). In response, Vero contends that the restrictive covenants are valid because they protect against misappropriation of trade secrets and other confidential information and that Maddox's services as a senior executive were unique and extraordinary. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 11–17).

Under New York law, a restrictive covenant is reasonable and thus enforceable if it "(1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388–89 (1999) (citations omitted). Maddox contests only the first prong. (*See* Br. in Supp. of Def.'s Mot. to Dismiss, at 10–11). The legitimate interest inquiry provides that "restrictive covenants will be enforceable to the extent necessary to prevent the disclosure or use of trade secrets or confidential

---

[2] Vero agrees that New York law governs the enforceability of the restrictive covenants. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 8).

customer information" or "where an employee's services are unique or extraordinary." *Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 308 (1976) (citations omitted).

Maddox first contends that the restrictive covenants are not necessary to prevent her from using or disclosing trade secrets or confidential information because the allegedly protected information itself—"information about Vero not placing PMSIs [purchase money security interests] on its inventory at AAF"—does not constitute a trade secret. (Br. in Supp. of Def.'s Mot. to Dismiss, at 11–12). She also contends that the Complaint lacks any allegation that she took trade secrets or confidential information from her employment with Vero and used them during her employment with NextGear, arguing that her alleged knowledge of AAF inventory with PMSI status amounts to nothing more than general knowledge that was ascertainable by proper means. (*Id.* at 12–15). Finally, Maddox contends that the services she provided to Vero were not unique or extraordinary because they did not require any special talents and that Vero fails to allege that she was a salesperson who controlled client relationships. (*Id.* at 17).

In response, Vero argues that Maddox misstates its allegations, which are not limited to information about PMSIs, but rather encompass "Vero's *strategies* for establishing PMSIs on specific inventory, together with its funding arrangements, lien priorities, monitoring applications, lending

6

processes, inventory valuations, and financing portfolios." (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 12). And Vero contends that it sufficiently pleads that Maddox's services were unique and extraordinary because she had control over Vero's relationship with AAF in both her onboarding and portfolio development of the client. (*Id.* at 16).

The Court agrees with Vero that these issues are not properly resolved at the motion to dismiss stage. (*Id.* at 13 (citing *Chevron U.S.A., Inc. v. Roxen Serv., Inc.*, 813 F.2d 26, 29 (2d Cir. 1987))). New York courts have acknowledged that "a non-compete agreement's enforceability generally turns on the fact-laden question of whether the agreement is 'reasonable'" and have therefore declined to find restrictive covenants are unenforceable at the motion to dismiss stage. *Installed Bldg. Prod., LLC v. Cottrell*, 2014 WL 3729369, at *6–8 (W.D.N.Y. July 25, 2014). And the cases that Maddox cites in opposition to this conclusion are distinguishable on the facts. *See e.g.*, *AM Medica Commc'ns Grp. v. Kilgallen*, 90 F. App'x 10, 11 (2d Cir. 2003); (Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 5, n.2).

In its Complaint, Vero plausibly pleads the existence of a trade secret as defined under New York law to support its claims for breach under the PIIA. *See Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407 (1993) (defining trade secret as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an

7

advantage over competitors who do not know or use it" (citation omitted)); Compl. ¶¶ 12–14, 25 (listing the compiled information used in Vero's business that allegedly give it an advantage over competitors who do not know or use such information). Vero also plausibly pleads that Maddox disclosed such trade secrets to NextGear and used them to Vero's detriment to strategically seize select inventory of AAF. (Compl. ¶¶ 51–52). Such allegations are sufficient to avoid dismissal on the alleged ground that the restrictive covenants in the PIIA are unenforceable under New York law.[3]

Maddox's primary objection to this conclusion is that the Complaint only references wrongful conduct specifically related to her alleged knowledge of the PMSI status of the seized AAF inventory, which she argues is fatal to Vero's claims. (Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 1–2 (citing Compl. ¶¶ 51–52)). Maddox contends that her alleged knowledge of this information "was not secret or confidential because, under the Uniform Commercial Code, Vero was required to give notice to NextGear if it had PMSIs on any of its inventory (which it did not)." (*Id.* at 2 (citing U.C.C. § 9-324(b)(2))). Aside from the lack of case law supporting this contention, the Court does not read this UCC provision as requiring what Maddox contends. Rather, the subsection

---

[3] In addition, Vero's allegations regarding Maddox's work for Vero and control over the AAF client relationship are sufficient to avoid dismissal under the line of case law regarding the unique or extraordinary services of a salesperson. *See Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 71–72 (2d Cir. 1999); (Compl. ¶¶ 10, 24, 42).

8

provides that "a perfected purchase-money security interest in inventory *has priority* over a conflicting security interest in the same inventory . . . if" certain requirements, including notice to the holder of the conflicting security interest, are met. U.C.C. § 9-324(b)(2) (emphasis added). The provision requires notice for a perfected PMSI holder to have priority over a conflicting security interest holder, but it does not necessarily require such notice. Absent some authority requiring the Court to dismiss the claims for breach under Maddox's asserted theory, the Court takes Vero's allegations as true, construes them in the light most favorable to Vero, and finds them to state plausible claims. Accordingly, the Court declines to find the restrictive covenants unenforceable at this stage.

### B. Breach of Non-Competition Restrictive Covenant (Count I)

Maddox separately claims that the Court should dismiss Count I because the restrictive covenant in the PIIA is overbroad. (Br. in Supp. of Def.'s Mot. to Dismiss, at 17). She contends that courts routinely deem non-competes unenforceable when they broadly restrain employees from working for companies that provide services similar to those of the prior employer and that her job duties at NextGear did not overlap in any way with her prior duties at Vero. (*Id.* at 18–19). Vero argues, in response, that Maddox's argument is again premature at the pleadings stage and cites to a clause in the PIIA that reasonably limits the restrictive covenant's applicability. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 18). Vero also distinguishes the case law on

9

which Maddox relies as occurring at different procedural stages or, in the case of the one 12(b)(6) motion, as materially distinguishable on the facts. (*Id.* at 19). For the reasons stated by Vero in its brief, the Court agrees that dismissal of Count I is improper on this asserted ground. That Maddox states her role and job responsibilities at NextGear were materially different from those at Vero does not require dismissal of Vero's claim for breach in Count I.

### C. Breach of Customer-Specific Restrictive Covenant (Count II)

Maddox next argues that the Court should dismiss Count II because she did not breach the customer-specific non-compete clause. (Br. in Supp. of Def.'s Mot. to Dismiss, at 19). She claims that the PIIA prohibits her from performing "competing services" for Vero's customers but that the Complaint alleges that she performed an audit of AAF inventory on behalf of NextGear, not AAF. (*Id.* at 20). But the Court agrees with Vero that it pleads a plausible claim for breach when it alleges that Maddox violated the customer-specific restrictive covenant by "providing services to AAF, a known client of Vero, that are akin to those she performed while employed with Vero and that directly compete with the products and services provided by Vero." (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 19–20 (citing Compl. ¶ 58)). That Vero alleges Maddox performed the audit of AAF inventory "on behalf of NextGear" does not necessarily contradict its allegation that she performed the services for AAF, as Maddox suggests. (Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 12).

10

Thus, dismissal of Count II is improper on this basis.

### D. Breach of Confidentiality Obligations (Count III)

Maddox then argues that the Court should dismiss Count III because she did not breach the confidentiality provisions in the PIIA. (Br. in Supp. of Def.'s Mot. to Dismiss, at 20). She restates her argument that her general knowledge of Vero's lending practices and relationship with AAF alone does not constitute confidential information or trade secrets that would support a claim for breach because the information was publicly available and reasonably ascertainable by NextGear. (*Id.* at 21). Similar to the reasons stated above, the Court agrees that Maddox's arguments go to the merits of Vero's claim and therefore are not dispositive on the present motion to dismiss. Rather, accepting the Complaint's allegations as true, Vero pleads a plausible claim against Maddox in Count III that she "used Vero's confidential information and/or trade secrets to orchestrate the repossession of Vero's AAF inventory." (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 20–21 (citing Compl. ¶ 59)). Therefore, Count III should not be dismissed on this ground.

### E. Violations of the Defend Trade Secrets Act (Count IV) and the Georgia Trade Secrets Act (Count V)[4]

Next, Maddox moves to dismiss Vero's federal and state trade secret misappropriation claims, arguing that Vero fails to plead the existence of a

---

[4] Count V in the Complaint was improperly numbered as Count VI.

trade secret or its misappropriation in the Complaint. (Br. in Supp. of Def.'s Mot. to Dismiss, at 22). To state a plausible claim, both the Defend Trade Secrets Act and the Georgia Trade Secrets Act require a plaintiff to show (1) that it had a trade secret and (2) that the defendant misappropriated that trade secret. *Angel Oak Mortg. Sols. LLC v. Mastronardi*, 593 F. Supp. 3d 1234, 1243–44 (N.D. Ga. 2022) (citations omitted).

> Whether information deserves protection as a trade secret is a question of fact. To prove the existence of a trade secret, the plaintiff must show that it possessed information—which may include technical or nontechnical data, financial plans, customer lists, a product design, or product plans—that derives economic value from not being generally known or readily ascertainable to others, and that "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

*Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1332 (N.D. Ga. 2007) (citations omitted); *see also Angel Oak Mortg. Sols. LLC v. Mastronardi*, 593 F. Supp. 3d at 1244 (noting that the federal statute requires "that the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce" (citation omitted)). In addition, both statutes define misappropriation to include "disclosure or use of a trade secret of another without express or implied consent." *Angel Oak*, 593 F. Supp. 3d at 1244 (citations omitted).

The Court concludes that Vero has pleaded viable claims under both the federal and state trade secret statutes. Vero's allegations, at the very least, plausibly encompass the definition of trade secrets provided above. (*See* Compl.

12

¶¶ 12–16). Even if the PMSI status on AAF's inventory itself did not constitute a trade secret (a conclusion the Court declines to make), the other protected information alleged by Vero suffices to support Vero's claims at this stage. *See Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1291 (11th Cir. 2003). And to support the alleged misappropriation, Vero makes more than just "conclusory allegation[s] of disclosure," as Maddox contends. (Br. in Supp. of Def.'s Mot. to Dismiss, at 23 (citing *Putters v. Rmax Operating, LLC*, 2014 WL 1466902, at *3 (N.D. Ga. Apr. 15, 2014)). Here, the Complaint alleges that Maddox had knowledge of Vero's particular funding arrangement with AAF and improperly used that confidential information to target certain inventory for repossession, (Compl. ¶¶ 51–52), which far exceeds the bare allegation of disclosure of the allegedly protected information in *Putters*. Accordingly, dismissal of the trade secrets claims in Counts IV and V would be improper.

### F. Tortious Interference (Count VI)[5]

Finally, Maddox moves to dismiss Vero's tortious interference claim, arguing that Vero has pleaded no facts showing any wrongful conduct by Maddox to use its confidential information. (Br. in Supp. of Def.'s Mot. to Dismiss, at 23–24). Maddox also claims a lack of allegations that she induced AAF to breach its contractual obligations to Vero or that she caused AAF to discontinue a business relationship with Vero. (*Id.* at 24). In response, Vero

---

[5] Count VI in the Complaint was improperly numbered as Count VII.

contends that it pleads factual detail that sufficiently supports all required elements of its tortious interference claim. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 24–25).

Under Georgia law, a claim for tortious interference with business and contractual relationships requires a showing of the following elements:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*LifeBrite Lab'ys, LLC v. Cooksey*, 2016 WL 7840217, at *9 (N.D. Ga. Dec. 9, 2016) (citation omitted). The Court agrees with Maddox that Vero has failed to plausibly plead inducement in support of its claim. Vero alleges generally that Maddox "tortiously interfered with Vero's contractual and business relationships with its client, AAF," (Compl. ¶ 122), but Vero fails to specify *how* Maddox's alleged wrongful conduct induced a breach of contractual obligations on AAF's part or caused AAF to discontinue its business relationship with Vero. (*See id.* ¶¶ 46–52). Accordingly, Vero has not pleaded a plausible claim for tortious interference against Maddox.

## IV.     Conclusion

For the foregoing reasons, the Defendant's Motion to Dismiss [Doc. 23] is GRANTED in part and DENIED in part. It is GRANTED as to the tortious

interference claim in Count VI, but it is DENIED as to the remaining claims.

SO ORDERED, this __10th__ day of June, 2024.

/s/ Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge